IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| SERENDIPITOUS, LLC/MELT; MELT FOOD TRUCK, LLC D/B/A MELT; and FANCY'S ON FIFTH, LLC D/B/A FANCY'S ON FIFTH,<br><br>PLAINTIFFS,<br><br>V.<br><br>THE CINCINNATI INSURANCE COMPANY,<br><br>DEFENDANT. | CASE NO: 20-cv-00873-MHH<br><br>JURY TRIAL DEMANDED |

**PLAINTIFFS' SECOND AMENDED AND SUPPLEMENTAL COMPLAINT**

COME NOW Plaintiffs, Serendipitous, LLC/Melt, Melt Food Truck, LLC d/b/a Melt, and Fancy's on Fifth, LLC d/b/a Fancy's on Fifth (hereinafter referred to collectively as "Plaintiffs" or "Melt") and bring the following Second Amended and Supplemental Complaint against The Cincinnati Insurance Company ("Defendant" or "Cincinnati Insurance").

**INTRODUCTION**

1. Plaintiffs are a collection of restaurants operating in Jefferson County, Alabama.

2. From mid-March 2020 through the present, Plaintiffs' business, like so many others, has been upended by the Novel Coronavirus, SARS-CoV-2, which spreads rapidly and causes the sometimes-deadly viral disease commonly known as COVID-19 (hereinafter, the novel coronavirus and the viral disease it causes will be referred to collectively as "COVID-19").

3. The global pandemic created by COVID-19 and the orders issued from the City of Birmingham, Jefferson County and the State of Alabama governments aimed at slowing the spread

of the pandemic have caused Plaintiffs to cease or substantially limit their business operations, resulting in substantial lost revenues.

4. To protect against threats such as this, which are wholly outside of Plaintiffs' control but substantially affect the revenue and survival of Plaintiffs' businesses, Plaintiffs obtained insurance coverage from Cincinnati Insurance. This coverage is provided to Plaintiffs through an expansive policy that provides coverage for any loss "unless the 'loss' is excluded or limited" by the policy. Specifically, the policy in question provides business interruption, extra expense, and civil authority coverages, among other coverages.

5. In blatant breach of the insurance obligations it voluntarily undertook in exchange for the acceptance of Plaintiffs' premium payments, Cincinnati Insurance has denied Plaintiffs' claim for coverage arising from the losses they have incurred due to, among other things, the health threat and physical harm created by the COVID-19 pandemic and the city, county and state restrictions related to COVID-19.

6. Consequently, Plaintiffs bring this action for a declaratory judgment establishing that they are entitled to receive the benefit of the insurance coverage they purchased, for breach of contract, and for bad faith.

## PARTIES, JURISDICTION, AND VENUE

7. Plaintiffs are three related Alabama limited liability companies with their principal places of business in Jefferson County, Alabama.

8. As to each Plaintiff LLC, the individual members are Paget Pizitz and Harriet Reis, both of whom are domiciled in Jefferson County, Alabama.

9. Defendant Cincinnati Insurance is a foreign insurance corporation organized and existing under the law of the state of Ohio and has its principal place of business in Ohio.

10. This Court has original subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a), which provides federal courts original jurisdiction over any civil action in which the parties are citizens of different states and the amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs. There exists complete diversity of citizenship between Plaintiffs and Defendant because Plaintiffs are Alabama limited liability companies with their members and principal places of business located in Alabama, and Defendant is an Ohio corporation with its principal place of business in Ohio.

11. This Court has personal jurisdiction over Defendant because Defendant has maintained systemic and continuous business contacts within the State of Alabama, including by transacting and conducting its insurance business in the State of Alabama.

12. Venue is proper in this District pursuant to 28 U.S.C. § 1391(a) because a substantial portion of the wrongful acts upon which this lawsuit is based occurred in this District, including the sale and delivery of the insurance policy at issue.

## FACTUAL ALLEGATIONS

### I.   The Pandemic

13. On March 11, 2020, the World Health Organization declared that the spread of COVID-19 constitutes a global pandemic.

14. Since on or before March 11, 2020, scientific and medical experts have been in continuous agreement that COVID-19 is highly contagious and can be deadly in some individuals.

15. As of July 8, 2020, at least 3 million Americans had been diagnosed with COVID-19.

16. Some individuals carrying COVID-19 are asymptomatic or pre-symptomatic, meaning they are spreading the virus but do not show symptoms or know they are sick.

17. Individuals with COVID-19 spread the virus through not only coughing and sneezing, but also through talking and laughing.

18. COVID-19, while invisible to the naked eye, also exists in droplets in the air and on surfaces.

19. Additionally, the research emerging in March showed that COVID-19 could stay alive on surfaces for up to 17 days.

20. The presence or likely presence of COVID-19 constitutes tangible, physical property damage. When COVID-19 is present or likely present it renders property dangerous and unusable.

## II.    The Policy

21. In exchange for substantial premiums, Defendant sold commercial property insurance Policy No. ECP0400693 (the "Policy") to Plaintiffs, agreeing to protect Plaintiffs against any losses not expressly excluded under the Policy.

22. The coverage provided under the Policy broadly covers any loss that is not expressly excluded. Specifically, the Policy provides coverage for physical damage, including but not limited to, loss of use of property, as well as, business interruption, extra expense, and civil authority coverages, among other coverages.

23. Although insurers can, and usually do, include virus exclusions in their commercial property insurance policies, Plaintiffs' Policy does not contain a virus exclusion. Defendant and other insurers selling policies without virus exclusions are at a competitive advantage over insurers selling policies with virus exclusions.

24. Plaintiffs' Policy was in full force and effect at all times relevant hereto, including from March 11, 2020 through the date of the filing of this lawsuit.

25. The Policy defines "loss" as "accidental physical loss or accidental physical damage." Whereas the insurance industry also defines "Direct Damage" as physical damage to property that results from the inability to use the damaged property.

26. Plaintiffs have sustained physical loss or damage in the form of virus contamination, resulting in an inability to use that property, as a direct result of COVID-19 contamination of covered property, adjacent properties, and resulting orders of civil authority.

### III.   The Response to the Pandemic

27. The COVID-19 pandemic has required Plaintiffs to take physical action to guard against the dangers of COVID-19, including closure, limited seating, requiring employees to wear masks and substantially increasing efforts to clean and disinfect their properties. Recently, Plaintiffs initiated additional professional cleaning and disinfecting to help curtail the spread of COVID-19.

28. Because the Policy covers all losses "unless the 'loss' is excluded or limited" by the policy, and the Policy does not have a "virus exclusion" or exclusion for losses due to government shutdowns/restrictions, the losses claimed by Plaintiffs are covered by the Policy.

29. Plaintiffs' restaurants have been closed or limited in their operations since March 2020 due to physical loss or damage caused by COVID-19.

30. Additionally, in response to the spread of COVID-19 throughout the United States, the State of Alabama, Jefferson County, Alabama and the City of Birmingham began issuing orders in March 2020 (the "COVID-19 Orders" or "Civil Authority Orders") which required restaurants and other businesses to close to the public or operate under specific, significant restraints.

31. Restraints on the operation of restaurants pursuant to the COVID-19 Orders are on-going.

32. For example, pursuant to the COVID-19 Orders initially entered in March and April of 2020, Plaintiffs' restaurants were open only for "curbside" pick up.

33. At some point, Plaintiffs' restaurants were able to re-open for dine-in service, but only in a limited capacity.

34. The losses against which Plaintiffs are insured under the Policy specifically include, among other things, business income losses such as those recently experienced by Plaintiffs as a result of COVID-19.

### IV.    The Denial of Plaintiffs' Claim for Policy Benefits

35. On or about May 12, 2020, Plaintiffs submitted a claim to Cincinnati Insurance requesting coverage for their losses as provided under the Policy.

36. On May 13, 2020, **immediately** upon receiving Plaintiffs' claim, Cincinnati Insurance sent a reservation of rights letter clearly indicating an intent to deny the claim based on, among other things, Cincinnati Insurance's position that: "the fact of the pandemic, without more, is not direct physical loss to property at the premises."

37. The May 13, 2020 reservation of rights letter from Cincinnati Insurance to Plaintiffs requested that Plaintiffs provide additional information related to the claim, and Plaintiffs provided the information requested.

38. On or about May 27, 2020, a mere 15 days after Plaintiffs submitted their claim, and without any material investigation, Cincinnati Insurance denied Plaintiffs' claim.

39.     In both the reservation of rights letter and the denial letter, Cincinnati Insurance misquotes the Policy, references requirements not actually contained in the Policy, and relies on exclusions that are clearly inapplicable.

40.     COVID-19 and the Orders issued in direct response to it have caused and continue to cause substantial business interruption and other losses to Plaintiffs, and triggered coverage under the Policy.

41.     Shortly after Cincinnati's denial letter was issued, in June 2020, seven of Plaintiffs' employees tested positive for COVID-19, and Plaintiffs' restaurants were forced to close completely for additional cleaning and disinfecting.

42.     The facts stated herein constitute physical loss or damage to Plaintiffs' covered properties.

43.     On June 29, 2020, counsel for Plaintiffs advised Defendant, in writing, of the positive COVID-19 test results of Plaintiffs' employees and the consequential closure of the restaurants.

44.     As of the date of the filing of this Second Amended and Supplemental Complaint, Defendant has not responded to counsel's June 29, 2020 correspondence.

45.     Plaintiffs' losses are ongoing and are expected to exceed one million dollars.

## COUNT I – DECLARATORY JUDGMENT

46.     Plaintiffs incorporate by reference, as if fully set forth herein, the facts set forth in in the preceding paragraphs.

47.     The Policy is an insurance contract under which Plaintiffs paid premiums to Cincinnati Insurance in exchange for its agreement to pay Plaintiffs' losses for claims covered by

the Policy, such as direct business interruption losses incurred as a result of the COVID-19 pandemic.

48. Plaintiffs have complied with all applicable provisions of the Policy, including payment of valuable premiums in exchange for coverage under the Policy.

49. Defendant has arbitrarily and without justification refused to reimburse Plaintiffs for any losses incurred by Plaintiffs in connection with the COVID-19 Orders and the interruption of Plaintiffs' businesses stemming from the COVID-19 pandemic.

50. An actual case or controversy exists regarding Plaintiffs' rights and Defendant's obligations under the Policy to reimburse Plaintiffs for the full amount of losses incurred by them in connection with the COVID-19 Orders and the interruption of business stemming from the COVID-19 pandemic.

51. Plaintiffs seek a declaratory judgment from this Court declaring the following:

   a. The losses incurred by Plaintiffs in connection with the COVID-19 Orders and the interruption of Plaintiffs' business stemming from the COVID-19 pandemic are insured losses under the Policy; and

   b. Defendant is obligated to pay Plaintiffs for the full amount of the losses that have been incurred and that will be incurred in the future in connection with the COVID-19 Orders and the interruption of business stemming from the COVID-19 pandemic.

## COUNT II – BREACH OF CONTRACT

52. Plaintiffs incorporate by reference, as if fully set forth herein, the facts set forth in in the preceding paragraphs.

53. The Policy is an insurance contract under which Defendant was paid premiums in exchange for its agreement to pay Plaintiffs' losses for claims covered by the Policy.

54. The presence of COVID-19 in the U.S., the state of Alabama, and Jefferson County was severe enough for governmental authorities to determine that the operation of businesses such as Plaintiffs' restaurants were so likely to have a presence of the COVID-19 virus that their operations needed to be restricted to prevent the further spread of the virus.

55. The presence of COVID-19 in the U.S., the state of Alabama and Jefferson County is significantly higher in July 2020 than it was when COVID-19 Orders were initially entered in March and April of 2020.

56. At least seven (7) employees of Plaintiffs have tested positive for COVID-19, requiring the closure of Plaintiff's businesses.

57. Plaintiffs have complied with all applicable provisions of the Policy, including payment of the premiums to Defendant in exchange for coverage under the Policy, and timely submission of their claim.

58. Defendant, however, has breached, and continues to breach, its obligations under the Policy by failing and refusing to pay benefits owed to Plaintiffs pursuant to the terms of the Policy.

59. Even upon being advised of Plaintiffs' employees having been diagnosed with COVID-19, Defendant did not reconsider its denial of Plaintiffs' claim.

60. As a result of Defendant's breach of the insurance contract, Plaintiffs have sustained substantial damages for which Defendant is liable, in an amount to be established at trial.

WHEREFORE, Plaintiffs demand compensatory damages in an amount to be established at trial.

## COUNT III – BAD FAITH

61. Plaintiffs incorporate by reference, as if fully set forth herein, the facts set forth in in the preceding paragraphs.

62. After receiving notice of the claim made by Plaintiffs, Defendant summarily denied Plaintiffs' request for coverage, without conducting a reasonable and adequate investigation of the claim.

63. The speed and manner of the denial indicates that Defendant's denial of Plaintiffs' claim was an automatic denial in a slew of blanket denials of COVID-19-related claims, without a reasonable and proper investigation of the merits of Plaintiffs' claim.

64. At all times relevant hereto, Defendant was under a duty to use good faith in the handling of Plaintiffs' claim.

65. Defendant failed and refused, however, to act in good faith and, without any legitimate or arguable reason for doing so, intentionally, willfully, and deliberately refused to pay benefits which Defendant knew were owed. Likewise, Defendant failed to adequately investigate Plaintiffs' claim.

66. As a direct and proximate result of Defendant's bad faith conduct, Plaintiffs have suffered financial damages.

WHEREFORE, Plaintiffs demand compensatory and punitive damages in an amount to be established at trial.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs seek the following relief:

A. The Declaratory Relief described in Count I;

    B.    Compensatory Damages in an amount sufficient to compensate Plaintiffs for the damages they have sustained;

    C.    Punitive Damages;

    D.    Interest; and

    E.    Such other and further relief as the Court deems just and proper.

**PLAINTIFFS DEMAND A TRIAL BY STRUCK JURY ON ALL ISSUES SO TRIABLE.**

    *s/ James S. Williams*
    James S. Williams (WIL187)
    Alyse N. Windsor (GIL083)
    Attorneys for Plaintiffs Serendipitous, LLC/Melt, Melt Food Truck, LLC d/b/a Melt, and Fancy's on Fifth, LLC d/b/a Fancy's on Fifth

**OF COUNSEL:**

**SIROTE & PERMUTT, P.C.**
2311 Highland Avenue South
Post Office Box 55727
Birmingham, AL 35255-5727
Tel.:   (205) 930-5100
Fax:   (205) 930-5101
jwilliams@sirote.com
awindsor@sirote.com

11

## **CERTIFICATE OF SERVICE**

      I hereby certify that on the 13th day of July, 2020, I filed the foregoing using the Court's CM/ECF Electronic Case Filing system which will send notification to the following, registered attorneys:

Augusta S. Dowd
Craig A. Shirley
WHITE ARNOLD & DOWD P.C.
2025 Third Avenue North, Suite 500
Birmingham, AL  35203
T:  (205) 323-1888
F:  (205) 323-8907
adowd@whitearnolddowd.com
cshirley@whitearnolddowd.com


                                      /s/ James S. Williams
                                      Of Counsel