FILED
2021 May-06  PM 05:05
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **SERENDIPITOUS,   LLC/MELT;** } | |
| **MELT FOOD TRUCK, LLC d/b/a** } | |
| **MELT; and FANCY'S ON FIFTH,** } | |
| **LLC d/b/a FANCY'S ON FIFTH,** } | |
| } | **Case No.: 2:20-cv-00873-MHH** |
| **Plaintiffs,** } | |
| } | |
| **v.** } | |
| } | |
| **THE CINCINNATI INSURANCE** } | |
| **COMPANY,** } | |
| } | |
| **Defendant.** } | |

## MEMORANDUM OPINION AND ORDER

"Serendipitous" means to unexpectedly come upon something good, beneficial, or favorable. *See Serendipitous, Dictionary.com*, http://dictionary.reference.com/browse/serendipitous (last visited May 6, 2021). The COVID-19 pandemic was unexpected, but it was not good or beneficial or favorable for restaurants like Serendipitous, Melt Food Truck, and Fancy's on Fifth, LLC—the plaintiffs in this case.  The restaurants seek insurance coverage from defendant Cincinnati Insurance Company for losses the restaurants attribute to the pandemic.  Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Cincinnati Insurance has asked the Court to dismiss this coverage action.  (Doc. 21).

For the reasons stated below, the Court denies Cincinnati Insurance's motion to dismiss.

**MOTION TO DISMISS STANDARD**

Rule 12(b)(6) enables a defendant to move to dismiss a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). Pursuant to Rule 8(a)(2), a complaint must contain, "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Generally, to survive a Rule 12(b)(6) motion to dismiss and meet the requirements of FED. R. CIV. P. 8(a)(2), "a complaint does not need detailed factual allegations, but the allegations must be enough to raise a right to relief above the speculative level." *Speaker v. U.S. Dep't of Health & Human Servs. Centers for Disease Control & Prevention*, 623 F.3d 1371, 1380 (11th Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Twombly*, 550 U.S. at 555).

In deciding a Rule 12(b)(6) motion to dismiss, a district court must view the allegations in a complaint in the light most favorable to the non-moving party. *Sun Life Assurance Co. v. Imperial Premium Fin., LLC*, 904 F.3d 1197, 1207 (11th Cir. 2018). A district court must accept well-pleaded facts as true. *Little v. CRSA*, 744

Fed. Appx. 679, 681 (11th Cir. 2018).  Therefore, in this opinion, the Court construes all factual allegations and the reasonable inferences from those allegations in the light most favorable to the restaurants, the non-movants.

**FACTUAL ALLEGATIONS**

The restaurants operate in Jefferson County, Alabama.  (Doc. 15, p. 1, ¶ 1). The Cincinnati Insurance Company sold the restaurants commercial property insurance Policy No. ECP0400693, which insured the restaurants from all risks not excluded by the policy.  (Doc. 15, p. 4, ¶ 21).[1]  The plaintiffs allege that the policy covers loss from physical damage, including coverage for "loss of use of property, as well as, business interruption, extra expense, and civil authority coverages, among other coverages."  (Doc. 15, p. 4, ¶ 22).  The policy does not include a "virus exclusion" as commercial property insurance policies sometimes do.  (Doc. 15, p. 4, ¶ 23).

The policy was in effect from March 11, 2020 through June 19, 2020, the date on which the plaintiffs filed this action against Cincinnati Insurance.  (Doc. 15, p. 4, ¶ 24).  On March 11, 2020, the World Health Organization declared COVID-19 a

---

[1]  The policy is attached to Cincinnati Insurance's motion to dismiss. The Court may consider the terms of the policy without converting Cincinnati Insurance's motion to dismiss into a summary judgment motion because the Court may review documents attached to a motion to dismiss if the documents are central to the plaintiff's claim, and the parties do not dispute the authenticity of the documents. *See Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002).  The restaurants' policy is central to the complaint, and no party disputes the authenticity of the document.

global pandemic.  (Doc. 15, p. 3, ¶ 13).  By July of 2020, millions of Americans had been infected with the disease, which is spread when coughing, sneezing, talking, or laughing causes contagious droplets to deposit in the air and on surfaces.  (Doc. 15, pp. 3–4, ¶¶ 15, 17, 18).  In response to the spread of COVID-19, the State of Alabama, Jefferson County, and the City of Birmingham issued orders that temporarily closed many businesses or required them operate under significant restraints.  (Doc. 15, p. 5, ¶ 30).  Pursuant to these orders, for months, the restaurants could provide only "curbside" pick up.  Later, the restaurants were able to seat customers but at a restricted capacity.  (Doc. 15, p. 6, ¶¶ 32–33).

COVID-19 and the government orders concerning the pandemic caused the restaurants to suffer business income losses, so the restaurants submitted a claim to Cincinnati Insurance Company for coverage for their losses under their commercial property insurance policy.  (Doc. 15, p. 6, ¶¶ 34–35).  Cincinnati Insurance denied the claim, stating that business disruption caused by COVID-19 was not covered by the policy.  (Doc. 15, p. 6, ¶¶ 36–38).  The restaurants then filed this lawsuit against Cincinnati Insurance.  (Doc. 1; Doc. 15).

**ANALYSIS**

Cincinnati Insurance argues that Court should dismiss this action because the restaurants have not adequately pleaded a direct physical loss under the terms of the policy and because the restaurants have not adequately pleaded that they are entitled

to coverage under the policy's civil authority provision. (Doc. 22). Alabama law governs these arguments. *Sphinx Int'l, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 412 F.3d 1224, 1227 (11th Cir. 2005).

Under Alabama law, the rules that govern the interpretation of an insurance policy are well-settled. A court must decide whether the policy, as it relates to the coverage at issue, is ambiguous or unambiguous. *Crook v. Allstate Indemnity Co.*, ___ So. 3d ___, 2020 WL 3478552, *3 (Ala. June 26, 2020) (quoting *State Farm Fire & Cas. v. Slade*, 747 So. 2d 293, 308 (Ala. 1999)). To make this determination,

> a court gives words used in the policy their common, everyday meaning and interprets them as a reasonable person in the insured's position would have understood them. *Western World Ins. Co. v. City of Tuscumbia*, 612 So. 2d 1159 (Ala. 1992); *St. Paul Fire & Marine Ins. Co. v. Edge Mem'l Hosp.*, 584 So. 2d 1316 (Ala. 1991).

*St. Paul Fire & Marine Ins. Co. v. Britt*, 203 So. 3d 804, 811 (Ala. 2016) (quoting *Travelers Cas. & Sur. Co. v. Alabama Gas Corp.*, 117 So. 2d 695, 699–700 (Ala. 2012) (internal marks omitted). "In determining the common meaning of the terms of an insurance policy," a court may "look[] to dictionary definitions." *B.D.B. v. State Farm Mut. Auto. Ins. Co.*, 814 So. 2d 877, 880 (Ala. Civ. App. 2001). A court also may consider "the writing as a whole and . . . its nature, purpose, and subject matter." *Blue Cross & Blue Shield of Alabama v. Beck*, 523 So. 2d 121, 124 (Ala. Civ. App. 1988); *see also Twin City Fire Ins. Co. v. Alfa Mut. Ins. Co.*, 817 So. 2d 687, 691–92 (Ala. 2001) ("'[A] court must examine more than an isolated sentence

5

or term; it must read each phrase in the context of all other provisions.'") (quoting

*Attorneys Ins. Mut. Of Alabama, Inc. v. Smith, Blocker & Lowther, P.C.*, 703 So. 2d

866, 870 (Ala. 1996)).

"If, under this standard," the words in a policy "are reasonably certain in their

meaning," then the policy provisions are not ambiguous as a matter of law.  *Britt*,

203 So. 3d at 811.  "Only in cases of genuine ambiguity or inconsistency is it proper

to resort to rules of construction."  *Britt*, 203 So. 3d at 811.  If a policy is ambiguous,

then the policy must be "'construed liberally in respect to persons insured and strictly

with respect to the insurer.'"  *Travelers Cas. & Sur. Co.*, 117 So. 3d at 700 (quoting

*Crossett v. St. Louis Fire & Marine Ins. Co*., 269 So. 2d 869, 873 (Ala. 1972)).

Here, the meaning of the word "loss" in the "Building and Personal Property

Coverage" portion of the restaurants' policy is at issue.  To help us determine

whether the word "loss" is ambiguous under the policy's property coverage

provisions, we first examine that coverage as a whole to help us identify the context

in which the term "loss" appears.

The "Building and Personal Property Coverage" portion of the restaurants'

policy covers physical property like buildings, permanent machinery and equipment,

furniture, outdoor signs, and "business personal property" like merchandise and

supplies.  (Doc. 22-1, p. 24).[2]  The "Building and Personal Property Coverage" also provides "Additional Coverages" for expenses associated with physical property loss like debris removal and fire department service charges, (Doc. 22-1, p. 34), and "Coverage Extensions" for business losses related to a physical property loss such as lost payments attributable to damaged or lost accounts receivable records and lost business income and extra expenses incurred while damaged or lost physical property is restored.  (Doc. 22-1, pp. 37, 39).

The latter coverage extension for "Business Income and Extra Expense" is the policy provision under which the restaurants seek coverage for their loss of income during the pandemic.  (Doc. 30, p. 4).  The Business Income coverage extension provides:

> We will pay for the actual loss of "Business Income" . . . you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by direct "loss" to property at a "premises" caused by or resulting from any Covered Cause of Loss.

(Doc. 22-1, p. 39).  The policy states that "words and phrases that appear in quotation marks have special meaning," and the policy directs the insured to the

---

[2] A detailed list of the physical property that the restaurants' policy covers appears at Doc. 22-1, pp. 24–25.  A detailed list of physical property not covered by the policy appears at Doc. 22-1, pp. 25–26.  Covered business personal property includes "Stock," and the definition of "Stock" appears at Doc. 22-1, p. 61 and includes merchandise and supplies.

DEFINITIONS section of the policy to find the special meaning of words and phrases in quotation marks.  (Doc. 22-1, p. 24).

In the DEFINITIONS section of the "Building and Personal Property Coverage" portion of the restaurants' policy, "Business Income" means "Net Income (net profit or loss before taxes) that would have been earned or incurred."  (Doc. 22-1, p. 59).  "'Suspension' means:  **a.** The slowdown or cessation of your business activities; and **b.** That a part or all of the 'premises' is rendered untenantable." (Doc. 22-1, p. 61).  "'Operations' means [] Your business activities occurring at the 'premises' . . ." (Doc. 22-1, p. 59).  The phrase "Period of Restoration" means:  "the period of time that **a.** Begins at the time of the direct 'loss'. **b.** Ends on the earlier of:  **(1)** The date when the property at the 'premises' should be repaired, rebuilt or replaced with reasonable speed or similar quality; or **(2)** The date when business is resumed at a new permanent location."  (Doc. 22-1, pp. 59–60).  But, a "Period of restoration does not include any increased period required due to the enforcement or compliance with any ordinance or law that **(1)** Regulates the construction, use, or repair, or that requires the tearing down of any property; or **(2)** Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of 'pollutants.'" (Doc. 22-1, p. 60).  "'Loss' means accidental physical loss or accidental physical damage."  (Doc. 22-1, p. 59).

In their complaint, the restaurants allege facts that, if proven, would allow the restaurants to establish that they lost income that they would have earned had they not had to slow down and, at times, cease activity at their restaurant locations. The plaintiffs assert that the COVID-19 pandemic caused them to have to close their restaurants and operate with limited seating when the restaurants were open. (Doc. 15, p. 5, ¶ 27). The restaurants allege that they "have been closed or limited in their operations since March 2020 due to physical loss or damage caused by COVID-19" and due to orders from the State of Alabama, Jefferson County, and the City of Birmingham. (Doc. 15, p. 5, ¶¶ 29–30). By way of example, the restaurants allege that in March and April of 2020, they were "open only for 'curbside' pick up." (Doc. 15, p. 5, ¶ 31).

Though the restaurants likely can prove that they lost income because they had to suspend their operations during the pandemic, the restaurants may recover under the "Business Income and Extra Expense" coverage extension in their policy only if the suspension of their restaurant activities was "caused by direct 'loss' to property." Cincinnati Insurance argues that the critical policy terms concerning "loss" are unambiguous and that the restaurants have not identified "***physical***" loss or damage to property needed to trigger coverage. (Doc. 22, p. 7) (emphasis in Cincinnati Insurance's brief). The restaurants contend the policy's definition of "loss" is ambiguous and that because the "loss" or "damage" requirements in the

9

definition of "Loss" are disjunctive, the words "loss" and "damage" must have distinct meaning.  (Doc. 30).

Again, the policy provides coverage for "'direct 'loss' to Covered Property at the 'premises' caused by or resulting from any Covered Cause of Loss," meaning direct "accidental physical loss or accidental physical damage."  (Doc. 22-1, pp. 59, 112).  The restaurants correctly point out that the alternative phrases "accidental physical loss" or "accidental physical damage" in the policy's definition of "Loss" indicates that each phrase has a separate meaning.  Were that not so, one of the phrases superfluous.  The distinction indicates that loss means something other than damage.

To help clarify the meaning of the word "loss," we can look to the dictionary.  *B.D.B.*, 814 So. 2d at 880 (using the Merriam-Webster's Collegiate Dictionary definition of "primarily").  Merriam-Webster defines "loss" as, among other things, "the act of losing possession," "the harm or privation resulting from loss or separation," and "the amount of an insured's financial detriment by death or damage that the insurer is liable for."   https://www.merriam-webster.com/dictionary/loss (last visited May 6, 2021).  Excluding, then, the concept of damage from the definition of "loss," loss means the restaurants' separation from business property that is physically intact.

It easy to identify examples of distinct "accidental physical loss" and "accidental physical damage." The policy's definition of "Specified causes of loss" provides a good place to begin. The policy includes in the definition of "Specified causes of loss" "windstorm." (Doc. 22-1, p. 60). Windstorms and tornadoes are all too familiar to Alabama residents. A strong wind can lift the roof from a building or tear apart an exterior wall of a building. Either constitutes physical damage to the building. That same wind can carry away indoor and outdoor furniture, merchandise, and outdoor signs, scattering the property miles from the insured building without necessarily damaging the property. The insured suffers a physical loss of that furniture and merchandise. Similarly, the policy includes in the definition of "Specified causes of loss" "riot or civil commotion." (Doc. 22-1, p. 60). Much like a windstorm, rioters can break down a door, and they can carry out of a building furniture and merchandise. The former is physical damage; the latter is physical loss in that the insured has lost possession of and been deprived of insured property. When property is damaged so badly that it cannot be used again, it typically is considered a loss. *See Britt*, 203 So. 3d at 806–08 (claim for policy proceeds after insured sailboat sank was claim for "accidental direct physical loss" of the insured property).

The restaurants have alleged facts that, if proven, constitute actual physical loss of their buildings and furniture during the pandemic. The restaurants allege that

they have had to close completely to disinfect their premises when an employee tests positive for the COVID virus.  (Doc. 15, pp. 7, 9).  The restaurants assert that between June 2020 and July 13, 2020, the day the restaurants filed their second amended complaint, seven employees tested positive for COVID-19.   The restaurants allege that civil authorities determined that restaurants "were so likely to have a presence of the COVID-19 virus that their operations needed to be restricted to prevent further spread of the virus," such that, even when they have been open during the pandemic, the restaurants have not been able to use their tables for dining.  (Doc. 15, pp. 5–6, ¶¶ 27–31).  In other words, the restaurants have alleged that they have been physically deprived of their property because of the COVID-19 virus.  Civil orders restricting the restaurants' access to their property because of the widespread presence of a rapidly spreading, invisible, lethal virus that survives on surfaces such as restaurant tables are not different in any meaningful way from civil orders that restrict access to a restaurant after fire destroys part of the building.  (Doc. 15, pp. 3–4, ¶¶ 14–19; *see* Doc. 22-1, p. 40).  Granted, a restaurant could state with certainty that the COVID-19 virus was physically present in its building only when an occupant became physically ill on the premises and tested positive for the virus shortly afterwards, but the restaurants allege that civil authorities limited access to the restaurants because the virus was so prevalent in the community and that the restaurants had to close completely when an employee contracted the virus, whether

or not the employee contracted COVID-19 at the restaurant, to disinfect the premises because the potential for spread of the "highly contagious" virus made the premises "dangerous and unusable" until the premises were disinfected.  (Doc. 15, pp. 4, 9).[3]

The fact that the COVID-19 virus has not physically altered the restaurants' property does not mean that coverage necessarily is not available for impacts to the property that are invisible to the naked eye.  The policy language indicates that the insurer understands that an insured may suffer physical loss without physical alteration of property because the policy excludes from coverage some expenses incurred because of invisible substances like vapor and fumes.  (*See, e.g.*, Doc. 22-1, pp. 29, 31, 37).[4]  Cincinnati could have excluded invisible substances like viruses but did not.  (Doc. 15, p. 4, ¶ 23).

The Court has found no binding authority that addresses this unusual situation. Cincinnati Insurance relies on *Mama Jo's Inc. v. Sparta Ins. Co.*, 823 Fed. Appx. 868 (11th Cir. 2020), a recent non-binding opinion from the Eleventh Circuit Court of Appeals.  In *Mama Jo's*, a restaurant sought coverage under an "all risk" commercial insurance policy for expense the restaurant incurred for the removal of

---

[3] The periods of closure for disinfection seem to qualify as periods of restoration if repair is understood by its dictionary definition.  *See* https://www.merriam-webster.com/dictionary/loss (last visited May 6, 2021) (stating that the verb "repair" means, among other things, "to restore to a sound or healthy state").

[4] Under the policy, vapor and fumes fall under the definition of "Pollutants."  "Pollutants" include solid, liquid, gaseous, or thermal contaminants including vapor and fumes.  (Doc. 22-1, p. 60).

"dust and debris generated by" nearby road construction and for lost income during the construction period. 873 Fed. Appx. at 871. Employees in the restaurant used "normal cleaning methods" to clear dust during the 18-month construction period. The restaurant lost income during the construction because, though the restaurant was open, "customer traffic decreased during the roadwork." 873 Fed. Appx. at 871. Applying Florida law, the Eleventh Circuit affirmed summary judgment for the insurer, finding that the restaurant had not established that the presence of dust and debris on its premises constituted direct physical loss or damage to the restaurant. With respect to the claim for cleaning expenses, the Eleventh Circuit stated that, "under Florida law, an item or structure that merely needs to be cleaned has not suffered a 'loss' which is both 'direct' and 'physical.'" 873 Fed. Appx. at 879. Under the terms of the all risk policy, the restaurant could not recover damages for lost income attributed to the nearby construction because the restaurant "did not put forward any Rule 56 evidence that it suffered a direct physical loss of or damage to its property during the policy period." 873 Fed. Appx. at 879.

Cincinnati Insurance argues that, like the dust in *Mama Jo's*, the presence of COVID-19 cannot be a direct physical loss because the COVID-19 virus can be cleaned from surfaces in the restaurant. Cincinnati Insurance states, "[t]he loss Plaintiffs allege is caused by the presence of the virus in our world, not by any

physical damage or effect on Plaintiffs' building or someone else's property." (Doc. 22, p. 19).

But the restaurants have alleged that they had to close entirely when employees tested positive for COVID-19. That distinguishes this case from *Mama Jo's*. And the highly contagious nature of COVID-19 caused civil authorities to temporarily limit capacity in restaurants to prevent the spread of the physical but invisible virus in restaurants. Cleaning was only one precaution for COVID-19; physical distancing was another, and that distancing, allegedly by civil order and not by choice, deprived the restaurants of the use of their property, i.e. their tables and seating, while the temporary orders were in place.

*Mama Jo's*, a summary judgment opinion, does not require dismissal of the complaint in this action. Ultimately, the restaurants may not prevail on their claims, but the Court does not find, based on Cincinnati Insurance's arguments concerning the definition of "Loss" in the restaurants' "Building and Personal Property Coverage," that dismissal under Rule 12(b)(6) is appropriate.[5]

---

[5] The Eleventh Circuit Court of Appeals has not issued a binding opinion concerning all risk coverage for COVID-19 business property losses. District courts have reached different conclusions regarding coverage largely based on the particular factual allegations and evidence in their respective cases. *Compare Southern Dental Birmingham LLC v. Cincinnati Insurance Co.*, Case No.: 2:20-cv-681-AMM, 2021 WL 1217327 (N.D. Ala. March 19, 2021), *with Hillcrest Optical, Inc. v. Continental Casualty Co.*, CIVIL ACTION NO. 1:20-CV-275-JB-B, 2020 WL 6163142 (S.D. Ala. Oc. 21, 2020).

**CONCLUSION**

For the reasons stated above, the Court denies Cincinnati Insurance's motion

to dismiss.  (Doc. 21).

**DONE** and **ORDERED** this May 6, 2021.

**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE

16